■ In the Matter of WOODHULL ASSOCIATES et al., Petitioners, v BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF NORTHPORT et al., Respondents.—Proceeding pursuant to CPLR article 78, in effect, to prohibit the respondent board of trustees from acting with respect to the approval or disapproval of certain resolutions of the respondent planning board, dated September 9, 1977, which granted final approval to petitioners' subdivision map. The respondents board of trustees and village clerk counterclaim and cross-claim to review the planning board's determination which resulted in the aforesaid resolutions. Petition granted, without costs or disbursements, counterclaims and cross-claims dismissed, on the law, the board of trustees is prohibited from acting with respect to the resolutions of the planning board and it is adjudged that the resolutions of the planning board are valid and binding. On October 2, 1973 the board of trustees, pursuant to section 7-738 of the Village Law, passed a resolution which empowered the planning board to modify all applicable provisions of the Zoning Ordinance of the Village of Northport with respect to premises owned by petitioner situated in a hilly area of ·the village. The resolution also provided that if the planning board decided to approve the final subdivision plat, it was to submit the plat to the board of trustees for its review and approval. Petitioners spent the ensuing three and one-half years, and a considerable sum of money, unsuccessfully attempting to obtain final approval of a cluster development plat from the planning board. Petitioner did obtain preliminary approval of a plat calling for a cluster development of 65 units. In March, 1977 the board of trustees amended the Village Code by adding provisions (ch 52) dealing with the development of hillside areas. In May, 1977 the board of trustees added paragraph F to section 52-10 of chapter 52. The new provision concerns cluster development of hillside areas. Paragraph F, *inter alia,* provides that the board of trustees, in appropriate cases, can direct the planning board to review a "steep slope" parcel for cluster development, pursuant to section 7-738 of the Village Law, upon written

application of the property owner. That portion of paragraph F is virtually identical to section 7-738 of the Village Law. Paragraph F further provides that if the planning board were given authorization by the board of trustees pursuant to section 7-738 of the Village Law to proceed, then it should (1) determine the lot yield of the proposed cluster development by applying the provisions of section 52-10 and (2) determine the lot yield without application of such provisions. In the event that the former was less than the latter, the property owner would be granted a hearing, on request, at which he would be permitted to introduce evidence that by clustering the development of the premises, the purpose and intent of section 52-10 would be satisfied and, accordingly, that he should be permitted to construct more than the number of such units otherwise permissible under section 52-10. The planning board determined that applying the provisions of section 52-10, the maximum lot yield would be 42 units, whereas without applying those provisions, the maximum lot yield would be 65 units. Petitioners requested and were accorded a hearing before the planning board. Thereafter, the planning board passed two resolutions, the first permitting construction of 65 units in a cluster development and the second granting final approval to petitioners' subdivision plat. Pursuant to the board of trustees' 1973 resolution, the planning board referred the application to it for final approval. However, by a 3 to 2 vote, the board of trustees rejected a proposed resolution to approve petitioners' plat. This proceeding ensued. The key question in this proceeding is which body has authority to grant final approval to petitioners' plat. We agree with petitioners that it is the planning board. The board of trustees' attempted reservation of final authority in the 1973 resolution was of no force and effect. Section 7-738 of the Village Law permits the board of trustees to authorize the planning board to modify applicable provisions of local laws subject to certain enumerated conditions and "such other reasonable conditions as the board of trustees may in its discretion add thereto." It is conceded that the condition in the board of trustees' resolution was not one enumerated in the statute. Nor is such a condition a reasonable one. Section 7-728 of the Village Law provides that a board of trustees may empower a planning board to approve subdivision plats. There is no provision authorizing conditional approvals. Further, section 7-740 provides for judicial review of such decisions of the planning board pursuant to CPLR article 78. There is no provision for review by a board of trustees. Accordingly, the decision of a duly empowered planning board regarding subdivision plat approval is final. Any attempt by a board of trustees to retain authority to approve a subdivision plat as a condition for authorizing a planning board to modify local laws applicable to such plat is unreasonable on its face. (Cf. *Orrell v Planning Bd. of Town of Pound Ridge,* 66 Misc 2d 843; Opns St Comp, 1964, No. 64-601.) Again, section 7-740 of the Village Law provides only for judicial review of a planning board's decision regarding modification of local laws. No provision is made for review by a board of trustees. Nor did the addition of paragraph F to section 52-10 divest the planning board of its previously granted authority. In our view considerations of equity and fundamental fairness militate against such a result. To hold otherwise would mean that petitioners could properly have been required to spend three and one-half years, and considerable sums of money, in an attempt to obtain approval of a 65-unit cluster development from a planning board cloaked with authority by the board of trustees and that the board of trustees could, with impunity, divest the planning board of such authority, and restrict petitioners to a 42-unit conventional development by passing an ordinance which procedurally

duplicated the State statute under which the board of trustees had originally acted. Further, sustaining the board of trustees' position would sanction what is, in effect, an ex post facto condition upon the original grant of authority to the planning board, to wit, a requirement that petitioners reapply for authorization at the demand of the board of trustees. Such a condition would be clearly improper under section 7-738 of the Village Law. The board of trustees should not be permitted to accomplish indirectly what they cannot accomplish directly. Since the planning board had authority to make the determination, the only other question we need reach is whether its determination was supported by substantial evidence on the record as a whole. A review of the transcript of the planning board hearing leaves no doubt that it was. We note, also, that the planning board gave proper consideration to the substantive provisions of section 52-10. Suozzi, J. P., Gulotta, Cohalan and Margett, JJ., concur.